United States District Court
Southern District of Texas
FILED

SEP 16 2004

Michael N. Milby, Clerk of Court

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

THELMA OLIVAREZ  §
  §
vs.  §        C. A. NO. B04-063
  §        (636(c))
  §
TIME WARNER CABLE, INC.
AND BOB CHERRY

### DEFENDANT'S, TIME WARNER CABLE, INC. and BOB CHERRY, MOTION FOR PARTIAL SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW**, TIME WARNER CABLE, INC. and BOB CHERRY, hereinafter Defendants and presents its Motion For Partial Summary Judgment as to the claims made against it for retaliation and for discrimination in violation of Texas Commission on Human Rights Act and for same would show that there is no genuine issue of fact based on competent summary judgment evidence which can form the basis of certain essential elements of these causes of action, and that Defendant is entitled to Judgment as a matter of law thereon and for such Motion would show unto the Court as follows:

**1.**

Defendant shall refer to the parties as follows: Plaintiff, THELMA OLIVAREZ, as "Plaintiff" or "Olivarez". Defendants, TIME WARNER CABLE, INC. and BOB CHERRY as "Defendants". TIME WARNER CABLE, INC. as "Time Warner."

**2.**

### SUMMARY JUDGMENT EVIDENCE

In support of this Motion attached hereto as Exhibit "A" are certain excerpts from

and exhibits to the deposition of Plaintiff Thelma Olivarez taken on August 27, 2004, which

has attache to it an Affidavit of Michael R. Ezell authenticating the same and as Exhibit "B'

the Affidavit of Bob Cherry.

**3.**

## NO RETALIATION

The Plaintiff asserts a cause of action under §21.055 of the Texas Commission on

Human Rights Act (TCHRA).  Specifically, Plaintiff asserts that "...she was wrongfully and

illegally retaliated against following her complaint of discrimination and discriminatory

practices." in paragraph VI of Plaintiff's Original Petition.

**4.**

Section 21.055 TCHRA states that:

"An employer, labor union, or employment agency commits an unlawful employment
practice if the employer, labor union, or employment agency retaliates or
discriminates against a person who, under this chapter:

(1)    opposes a discriminatory practice;
(2)    makes or files a charge;
(3)    files a complaint; or
(4)    testifies, assists, or participates in any manner in an investigation,
       proceeding, or hearing."

**5.**

The Fifth Circuit Court of Appeals recently set out the elements of proof applicable

to this cause of action in  *Pineda v. United Parcel Service, Inc.*, C.A.5.(Tex.) 2004, WL

287141 where the Court stated:

"In a retaliation case, the plaintiff must first made a *prima facie* showing: 1) that he
is engaged in a protected activity; 2) that an adverse employment action occurred;
and 3) that a casual link existed between the protected activity and the adverse
action. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).  Once the plaintiff made

a *prima facie* case, 'the burden then shifts to the defendant to demonstrate a legitimate nondiscriminatory purpose for the employment action.' *Id.*
. . . .

"We have consistently held that in retaliation cases where the defendant has proffered a nondiscriminatory purpose for the adverse employment action the plaintiff has the burden of proving that 'but for' the discriminatory purpose he would not have been terminated. *See Medina v. Ramsey Steel Co., Inc.,* 238 F.3d 674,685 (5th Cir. 2001) (Plaintiff 'must demonstrate that he would not have been terminated 'but for' engaging in the protected activity.'); *Long v. Eastfield College,* 88 F.3d 300, 305 n.4 (5th Cir. 1996) ('[E]ven if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct.')."

### 6.

Plaintiff's own testimony and that of Bob Cherry show that Plaintiff cannot meet the first and third elements of her *prima facie* case. As to the first element, the Plaintiff did file a complaint with Time Warner's Human Relations Department and with the La Feria, Texas Police Department, over an incident involving her supervisor, Bob Cherry. This incident is the basis of Plaintiff's assault cause of action in this case. Plaintiff does not allege that the chair incident occurred because of her being a member of any protected group under state or federal law. In fact, Plaintiff acknowledges that this incident was not based on a discriminatory motive but occurred because of a problem with paperwork. In one of the documents which Plaintiff signed and filed with the EEOC, Plaintiff states:

" I realize that the throwing of the chair by Bob Cherry (on 10-09-03), may not be discrimination based on my sex and national original..." See Exhibit "A", page 67, line 18 to 22 and Olivarez Deposition Exhibit 4.

### 7.

In another letter sent by Plaintiff to the EEOC, the Plaintiff states that:

"On or about 10-09-03 Mr. Bob Cherry threw a chair in my direction, because he

was angry due to some paperwork that he felt was not getting the attention or he was getting the wrong impression that the paperwork that I was retrieving from the computer was wrong."    See Exhibit "A", page 76, line 23 to page 77, line 3 and Olivarez Deposition, Exhibit 5.

**8.**

As to the third element, Plaintiff did in fact file a charge of discrimination with the Equal Employment Opportunities Commission (EEOC). This complaint, however, was filed on May 28, 2003.  Plaintiff's employment was terminated in December of 2002. (See Exhibit "A", Page 77 and Olivarez Deposition Exhibit 8). There was simply no opposition to a discriminatory practice, complaint, charge, or participation in an investigation under the Texas Commission on Human Rights Act which occurred at or before the time that Plaintiff was terminated or for several moths thereafter. *See, also, Equal Employment Opportunity Comm'n v. Total Systems Servs. Inc.*, 221 F.3D 1171 (11th Cir. 2000) where it was held that participation in an employer's internal investigation did not as a protected activity under the federal "participation clause", 42 U.S.C. §2000e-3(a) similar to §21.055 THRCA and holding that only after a formal EEOC complaint was filed was that clause applicable.

**9.**

Also as to the third element of Plaintiff's *prima facie* case, as is shown by the Affidavit of Bob Cherry, Plaintiff's termination was solely the result of reduction in force and a part of the change in work and reduction in work  of the office in which Plaintiff was working because of the completion of the project for which that office was created.  (See Exhibit "B" Affidavit of Bob Cherry).  This was a  termination that Plaintiff had known was coming because the project was only for a limited period of time and Plaintiff and all the employees in this office knew that their employment was of a temporary and not a

permanent nature. (See Affidavit of Bob Cherry Exhibit "B" hereto and Exhibit "A" page 14, line 18 to page 15, line 5).

## 10.

## NO NATIONAL ORIGINAL DISCRIMINATION

Plaintiff asserts that she was terminated on the basis of national origin in violation of § 21.001 et. seq. Texas Commission on Human Rights Act (TCHRA). As is established by the Affidavit of Bob Cherry attached hereto, Plaintiff's employment with the construction division of Defendant Time Warner in the Rio Grande Valley of Texas was, as was that of all other employees in that project, temporary. The work of that division to complete a major upgrade of the Time Warner Cable Television Distribution System in the Rio Grande Valley of Texas. All employees were advised at the time of their employment that when this construction project was completed their job would be eliminated. (See Affidavit of Bob Cherry). Plaintiff has acknowledged that in her deposition (See Exhibit "A" page 14, line 18 to page 15, line 5). At the time of Plaintiff's termination, this project was winding down Plaintiff and many other employees were terminated. Within a year of Plaintiff's termination, substantially all of the employees of this division had been terminated. The Plaintiff's work involved review of construction drawings reflecting actual installation of cable television system components and the dispatching of crews to perform various jobs. The numbers of construction employees and construction crews were declining dramatically at the time of Plaintiff's termination and the quantity of work to be done reviewing as built drawings was also declining dramatically. Plaintiff's termination was simply a part of the winding up of this project and of the planned elimination of all of the jobs in it as had been expected by all of the employees in Defendant's construction division

in the Rio Grande Valley of Texas (See Exhibit "B" Affidavit of Bob Cherry). Also, effective January 1, 2003, the nature of the work being done by the construction division in the Rio Grande Valley changed from upgrade of old cable plant to construction of new cable plant. Then as built work was not needed and all of those employees were terminated. Dispatching of crews was entirely different with the new type of work. Plaintiff's termination was solely due to a reduction in force and not to her sex, race or national origin. (See Exhibit B, Affidavit of Bob Cherry).

**11.**

The Summary Judgment evidence shows legitimate non-discriminatory reasons for the Plaintiff's termination. Therefore, the burden is on the Plaintiff to show that these reasons are not genuine but a mere pretext for discrimination. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S.248, 255-256 (1981). *See also Ramirez v. Landry's Seafood Inn & Oyster Bar,* 280 F.3d 576 (5th Cir. 2002).

**WHEREFORE PREMISES CONSIDERED** Defendants, TIME WARNER CABLE, INC. and BOB CHERRY, move the Court to GRANT this Motion for Partial Summary Judgment and dismiss the case as to Plaintiff's causes of action for retaliation and discrimination as to Defendants all as set out above, and grant Defendants its costs of court and such other relief as Defendants may show itself entitled to receive.

Respectfully submitted,
Michael R. Ezell
**LAW OFFICE OF MICHAEL R. EZELL**
312 E. Van Buren
P. O. Box 2878
Harlingen, Texas 78551
Telephone:   (956) 425-2000
Facsimile:    (956) 421-4258

**By:** _____

**MICHAEL R. EZELL**
State Bar No.: 06764200
Federal I.D. 2250

**Attorney for TIME WARNER CABLE, INC. and BOB CHERRY**

## CERTIFICATE OF SERVICE

I hereby certify that on this the 15th day of September 2004, a true and correct copy of the foregoing was sent via facsimile and Certified Mail, Return Receipt Requested to Mr. Miguel Salinas, *LAW OFFICE OF MIGUEL SALINAS*, 803 Old Port Isabel Rd., Brownsville, TX 78521.

MICHAEL R. EZELL

UNITED STATES DISTRICT COURT
SOUTHERN DISTSRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| THELMA OLIVAREZ | ) ( | |
|     Plaintiff | ) ( | |
| | ) ( | |
| VS. | ) ( | C.A. NO. B04-063 |
| | ) ( |    (636-c) |
| TIME WARNER CABLE, INC. | ) ( | |
| AND BOB CHERRY | ) ( | |
|     Defendant | ) ( | |

---

ORAL DEPOSITION OF
THELMA OLIVAREZ
AUGUST 27, 2004

---

ORAL DEPOSITION OF THELMA OLIVAREZ, produced as a witness at the instance of the DEFENDANTS, taken in the above-styled and numbered cause on AUGUST 27, 2004, reported by PEGGY BRYANT, Certified Court Reporter No. 1208, in and for the State of Texas, at the offices of Miguel Salinas, 803 Old Port Isabel Road, Brownsville, Texas, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached therein.

EXHIBIT
A

ORIGINAL

BRYANT & STINGLEY, INC.
McAllen       Harlingen       Brownsville
(956)618-2366   (956)428-0755   (956)542-1020

<u>APPEARANCES</u>

COUNSEL FOR PLAINTIFF:

    MIGUEL SALINAS
    LAW OFFICES OF MIGUEL SALINAS
    803 Old Port Isabel Road
    Brownsville, Texas  78520

COUNSEL FOR DEFENDANT:

    MICHAEL R. EZELL
    LAW OFFICE OF MICHAEL R. EZELL
    312 East Van Buren
    Harlingen, Texas  78551

<u>INDEX</u>

|  | PAGE |
|---|---|
| Appearances ..................................... | 2 |
| <u>THELMA OLIVAREZ</u> | |
| Examination by Mr. Ezell ...................... | 5 |
| Errata Sheet/Signature Page .................... | 112 |
| Reporter's Certificate ......................... | 113 |

Attached to the end of the transcript:  Stipulations

BRYANT & STINGLEY, INC.
McAllen        Harlingen        Brownsville
(956)618-2366    (956)428-0755    (956)542-1020

## EXHIBITS

| NUMBER | DESCRIPTION | PAGE IDEN. |
|---|---|---|
| 1 | Deposition Notice .......................... | 29 |
| 2 | Job application with Time Warner ........... | 6 |
| 3 | Intake Questionnaire ....................... | 64 |
| 4 | EEOC Affidavit ............................. | 67 |
| 5 | 4-17-03 Complaint to EEOC .................. | 76 |
| 6 | Notice of Charge of Discrimination ......... | 77 |
| 7 | Letter from EEOC Regarding Discrimination Charge ..................................... | 77 |
| 8 | EEOC Charge of Discrimination Form ......... | 77 |
| 9 | (Not submitted) ............................ | -- |
| 10 | 10-14-03 Letter to EEOC Regarding Discrimination Charges ..................... | 89 |
| 11 | 10-17-02 Letter from Kathy Sapio to Thelma Olivarez ............................ | 65 |
| 12 | Dismissal & Notice of Rights Form .......... | 94 |
| 13 | EEOC Notice of Charge of Discrimination ..... | 95 |
| 14 | Drawing of Office Area ..................... | 31 |
| 15 | Letter from EEOC Regarding Discrimination Charge ..................................... | 87 |
| 16 | Handwritten Witness List ................... | 88 |
| 17 | La Feria Police Department Incident Narrative .................................. | 56 |
| 18 | 10-29-02 Letter from Jesus Contreras to Time Warner, Kathy Sapio ................... | 75 |
| 19 | Employee Change Request .................... | 76 |

4

<u>EXHIBITS</u>  (Continued)

| NUMBER | DESCRIPTION | PAGE IDEN. |
|--------|-------------|------------|
| 20 | Statements from Ruben Salinas and Diana Richards ................................. | 91 |
| 21 | As-Built Clerk Job Description ............ | 13 |
| 22 | Time Warner Organizational Chart .......... | 62 |
| 23 | List of Witnesses ......................... | 90 |
| 24 | 2002 Employee Evaluation .................. | 92 |
| 25 | 2002 Employee Evaluation .................. | 92 |
| 26 | 2001 Employee Evaluation .................. | 92 |
| 27 | Name of Physician's Assistant ............. | 53 |
| 28 | 2003 Wage Information ..................... | 100 |
| 29 | August 2004 Payroll Information ........... | 101 |
| 30 | Article - Common Channels ................. | 101 |

<u>REQUESTED DOCUMENTS/INFORMATION</u>

| NUMBER | DESCRIPTION | PAGE |
|--------|-------------|------|
| 1 | Photographs ............................ | 30 |
| 2 | Date of Cable Show in 2002 ............. | 37 |
| 3 | Name of Project Manager in Ohio ........ | 37 |
| 4 | Copies of emails ....................... | 73 |
| 5 | Personal Notes ......................... | 75 |
| 6 | Medical and Pharmacy Receipts .......... | 109 |

|       |     |                                                        |
|-------|-----|--------------------------------------------------------|
|       | 1   | THELMA OLIVAREZ,                                        |
|       | 2   | having been duly sworn, testified as follows:          |
|       | 3   | EXAMINATION                                            |
| 10:03 | 4   | BY MR. EZELL:                                           |
| 10:09 | 5   | Q.   Ma'am, would you state your full name?            |
| 10:09 | 6   | A.   Thelma Olivarez.                                   |
| 10:09 | 7   | Q.   And are you the plaintiff in a lawsuit against    |
| 10:09 | 8   | Time Warner Cable and Bob Cherry?                       |
| 10:09 | 9   | A.   Yes, sir.                                          |
| 10:09 | 10  | Q.   Ever given a deposition before?                   |
| 10:09 | 11  | A.   Yes.                                               |
| 10:09 | 12  | Q.   In what kind of case?                             |
| 10:09 | 13  | A.   There was an accident at the Time Warner,         |
| 10:10 | 14  | outside, and the -- it was a fatal accident, actually, |
| 10:10 | 15  | and I -- I was there, so they had to come talk to      |
| 10:10 | 16  | everybody, so -- it was short.  That was the only time. |
| 10:10 | 17  | Q.   Okay.  Well, you probably know the rules then     |
| 10:10 | 18  | generally.  When I ask you a question, I'll assume you  |
| 10:10 | 19  | understand it unless you ask me to repeat it or        |
| 10:10 | 20  | rephrase it, and if you do, I will.  Also, I'll try not |
| 10:10 | 21  | to talk over you, and if you would not talk over me,   |
| 10:10 | 22  | because the court reporter, of course, can only do one |
| 10:10 | 23  | of us at a time.  And again, I'll try to let you finish |
| 10:10 | 24  | your answer before I ask the next question, and that   |
| 10:10 | 25  | will help her out a lot.  Is that fair?                |

14

10:22 1    Q.   Excuse me, the clerk?

10:22 2    A.   Right.

10:22 3    Q.   Is that the job description that was your job

10:22 4    description when you went to work there?

10:22 5    A.   Yes, sir.

10:22 6    Q.   Does that job description accurately reflect

10:22 7    what you did?

10:22 8    A.   Yes.

10:22 9    Q.   You went into the construction division of Time

10:22 10   Warner.  What did you understand the construction

10:22 11   division was going to do and how long they were going

10:22 12   to do it?

10:23 13   A.   When I talked -- you mean during the

10:23 14   application or at any time?

10:23 15   Q.   Well, let's just take the application time.

10:23 16   Did they tell you how long the projects would go on,

10:23 17   for instance?

10:23 18   A.   Yes.  They said it was an upgrade and that it

10:23 19   would end in two years.

10:23 20   Q.   And how long did it take for it to end?

10:23 21   A.   It just ended a few months ago, and I applied

10:23 22   in '99, so four years, four years and a half, something

10:23 23   like that.

10:23 24   Q.   So the project they had planned to do in two

10:23 25   years they did in four, four and a half, more or less?

10:23 1     A.   Yes, sir.

10:23 2     Q.   And what did you understand would happen to

10:23 3   your job at the end of the construction project?

10:23 4     A.   What they said happened?  That it -- the

10:23 5   upgrade was over, so my position was no longer needed.

10:23 6     Q.   So you knew this position would run out with

10:23 7   the project?

10:24 8     A.   I was aware that it would, but I was also aware

10:24 9   that there was other positions that I could transfer to

10:24 10  within the construction division.

10:24 11    Q.   What other positions did you think you would be

10:24 12  able to transfer to in the construction division?

10:24 13    A.   All the projects had this scope of work that I

10:24 14  did for this project.  They had retrained others.  They

10:24 15  could have easily, I'm sure, if they had chosen to,

10:24 16  retrained me, or offered to.

10:24 17    Q.   Did you ask to be retrained for anything?

10:24 18    A.   I wasn't aware at this time that -- at the time

10:24 19  when it happened that I was going to be terminated.

10:24 20  I -- I didn't see -- I knew it was going to happen

10:24 21  eventually, but I thought that they would let me know

10:25 22  that it was coming, not that day.

10:25 23    Q.   So you didn't get as much warning as you

10:25 24  expected?

10:25 25    A.   Well, not as much as all the other supervisors

| | | |
|---|---|---|
| 11:48 | 1 | A.  Yes, sir. |
| 11:48 | 2 | Q.  And do you know if she talked to other people |
| 11:48 | 3 | involved in the incident? |
| 11:48 | 4 | A.  I know she talked to Ruben because she -- she |
| 11:48 | 5 | called when I was there and asked him to go to another |
| 11:49 | 6 | phone.  That was the extent of their investigation as |
| 11:49 | 7 | well, just the phone calls.  They never came to |
| 11:49 | 8 | investigate the room or to talk to me.  I thought, you |
| 11:49 | 9 | know, they would have been more professional about |
| 11:49 | 10 | that.  At least come and talk to us in person, and, you |
| 11:49 | 11 | know, check out the situation in the room. |
| 11:49 | 12 | Q.  Do you know who else she talked to? |
| 11:49 | 13 | A.  No, sir. |
| 11:49 | 14 | MR. SALINAS:  I need a break for two |
| 11:49 | 15 | minutes.  I need to make sure someone picks up my |
| 11:49 | 16 | daughter. |
| 11:51 | 17 | (Brief recess) |
| 11:51 | 18 | Q.  I'll hand you what's marked as Exhibit 4 to |
| 11:51 | 19 | your deposition.  Can you tell us what that is? |
| 11:51 | 20 | A.  EEOC affidavit. |
| 11:51 | 21 | Q.  Is that something that you signed and filed |
| 11:51 | 22 | with the EEOC? |
| 11:51 | 23 | A.  Yes, sir. |
| 11:51 | 24 | Q.  And you say you think you were subjected to |
| 11:51 | 25 | retaliation for making a complaint.  What form do you |

12:06 1    Q.   This is Exhibit 19.  See if you can tell us

12:06 2  what that is.

12:07 3    A.   Title change, I believe.  Employee Change

12:07 4  Request is what it says.

12:07 5    Q.   What change does it reflect?

12:07 6    A.   The pay raise and a title change.

12:07 7    Q.   You can't tell from what or to what?

12:07 8    A.   Oh, as-built clerk to mapper, it says.

12:07 9    Q.   And what date is that?

12:07 10   A.   5-26, 2000.

12:07 11   Q.   Do you recollect having a job title of mapper

12:07 12 at any point in time?

12:08 13   A.   No.  I was always an as-built clerk.  The

12:08 14 reason they put mapper-permit person was to justify the

12:08 15 raise.

12:08 16   Q.   So that reflects your getting a raise then?

12:08 17   A.   Right, because they wanted to give me a raise,

12:08 18 but as an as-built clerk I couldn't receive a raise

12:08 19 because I was at where I needed to be for that

12:08 20 increase.  So in order for the increase, they needed to

12:08 21 change my title so that they could go that range.  But

12:08 22 I was still considered an as-built clerk.

12:08 23   Q.   I'll hand you what's marked as Exhibit 5, and

12:08 24 see if you can tell us what that is.

12:08 25   A.   A letter to EEOC.

| | | |
|---|---|---|
| 12:08 | 1 | Q.   And is that a letter that you wrote and sent to |
| 12:09 | 2 | EEOC? |
| 12:09 | 3 | A.   Yes, sir. |
| 12:09 | 4 | Q.   How close did the chair come to you in feet? |
| 12:09 | 5 | A.   Probably two or three. |
| 12:09 | 6 | Q.   So the length of your arm maybe? |
| 12:09 | 7 | A.   Uh-huh. |
| 12:09 | 8 | Q.   Do you know what Exhibit 6 is? |
| 12:09 | 9 | A.   EEOC -- U.S. Equal Opportunity Commission, a |
| 12:10 | 10 | letter to Kathy -- I mean, telling Kathy Sapio that I |
| 12:10 | 11 | am filing notice of charge of discrimination, it says. |
| 12:10 | 12 | Q.   That's something that came from the government |
| 12:10 | 13 | and not from you? |
| 12:10 | 14 | A.   Right. |
| 12:10 | 15 | Q.   Let me hand you Exhibit 8, and I'll ask if |
| 12:10 | 16 | that's a document that you signed. |
| 12:10 | 17 | A.   Yes. |
| 12:11 | 18 | Q.   Okay. |
| 12:11 | 19 | A.   Charge of Discrimination, Texas Commission on |
| 12:11 | 20 | Human Rights. |
| 12:11 | 21 | Q.   Exhibit 7, is that a document that you received |
| 12:11 | 22 | from EEOC? |
| 12:11 | 23 | A.   Yes, sir. |
| 12:11 | 24 | Q.   And they say there that they are giving you a |
| 12:11 | 25 | summary of the response, I guess, of Time Warner in |

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

```
THELMA OLIVAREZ            ) (
        Plaintiff          ) (
                           ) (
VS.                        ) (   C.A. NO. B04-063
                           ) (      (636-c)
Time Warner Cable, INC.    ) (
AND BOB CHERRY             ) (
        Defendant          ) (
```

REPORTER'S CERTIFICATE

I, PEGGY BRYANT, Certified Court Reporter in and for the State of Texas, certify that the witness, THELMA OLIVAREZ, was duly sworn by me, and that the deposition is a true and correct record of the testimony given by the witness on AUGUST 27, 2004; that the deposition was reported by me in stenograph and was subsequently transcribed by me or under my supervision.

I FURTHER CERTIFY that I am not a relative, employee, attorney or counsel for any of the parties, nor a relative or employee of such attorney or counsel, nor am I financially interested in the action.

WITNESS MY HAND on this the _9th_ day of _September_, 2004.

_Peggy Bryant by Y.J._
PEGGY BRYANT, Texas CSR 1208
Expiration Date: 12-31-04
Firm Registration No. 41
Bryant & Stingley, Inc.
2010 East Harrison
Harlingen, Texas 78550
(956) 428-0755

Chrg # 360-2003-012

## EEOC AFFIDAVIT

*(This form is affected by the Privacy Act of 1974. See Privacy Act Statement on reverse before completing this form.)*

| NAME | TELEPHONE NUMBER *(Give area code)* |
|---|---|
| Thelma Olivarez | HOME: (956) 797-3811   WORK: |

ADDRESS (Number, street, city, state, zip)
**300 W. 8th St., Box 9612,  La Feria, TX 78559**

### THE FOLLOWING PERSON CAN ALWAYS CONTACT ME

NAME AND TELEPHONE NUMBER
Cruz Olivarez    (956) 636-1965

ADDRESS (Number, street, city, state, zip)
**P O Box 1003, Santa Rosa, TX 78593**

### STATUS OF EMPLOYMENT

| CHECK ONE. | | NAME OF EMPLOYER |
|---|---|---|
| ☐ WORKING | ☒ NOT WORKING | |
| | ☐ SOUGHT EMPLOYMENT AT | |

| TYPE OF BUSINESS | DATES OF EMPLOYMENT | FROM: | TO: |
|---|---|---|---|
| | WHEN EMPLOYMENT WAS SOUGHT | FROM: | TO: |

| POSITION TITLE | DEPARTMENT |
|---|---|

ADDRESS (Number, street, city, state, zip)

See attached documents submitted with Intake Questionnaire

I was hired as a supervisor in ~~1999~~. My assigned project was expected to last two years, but it last four year. During my employment, there were 80 employees under my supervisor as I oversaw all crews in the field.

I realize the throwing of the chair by Bob Cherry (on 10/09/03), may not be discrimination based on my sex & national origin as other employees were present at the time, but the chair was thrown in my direction. While Human Resources at the corporate office responded to my concerns, I believe I was subjected to retaliation for making the complaint.

A few week before I was laid off (on 12/15/02), an Anglo male (Dover) was brought in and we were told he would be overseeing projects. I was informed that I was being laid off because the project was wrapping up, but Dover was hired for my position.

Deanne Guillame, Anglo female, was allowed to transfer from ~~Cleveland~~, OH to TX after having disciplinary problems at another location. The company has transferred other employees to locations where projects are available. I was not offered any alternatives regarding my employment.

Olivarez

EXHIBIT NO. 4
8-27-04
Peggy Bryant

# EEOC AFFIDAVIT

*I declare under the penalty of perjury that the foregoing is true and correct.*

| DATE | SIGNATURE OF WITNESS | SIGNATURE OF EEOC REPRESENTATIVE | PAGE |
|------|---------------------|----------------------------------|------|
| 5/28/03 | | | 2 OF 2 |

PRIVACY ACT STATEMENT:    (This form is covered by the Privacy Act of 1974, Public Law 93-579. Authority for requesting and uses of the personal data are given below.)

1. FORM NUMBER/TITLE/DATE: EEOC FORM 133, EEOC AFFIDAVIT, December 1993.

2. AUTHORITY: 42 USC 2000e(9), 29 USC 201, 29 USC 621, 42 U.S.C. 12117.

3. PRINCIPAL PURPOSES. Provides a standardized format for obtaining sworn statements of information relevant to a charge of discrimination.

4. ROUTINE USES. These affidavits are used to: (1) make an official determination regarding the validity of the charge of discrimination; (2) guide the Commission's investigatory activity; (3) in Commission litigation, to impeach or substantiate a witness's testimony.

5. WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION: Voluntary. Failure to provide an affidavit has no effect upon the jurisdiction of the Commission to process a charge. However, sworn statements submitted by the parties, are, of course, relied upon more heavily than unsworn statements in making a determination as to the existence of unlawful discrimination.

REVERSE OF EEOC FORM 133 (10/94)

April 17, 2003

*Thelma Olivarez*

EEOC
5410 Fredericksburg Rd.
Suite 200
San Antonio, Texas  78229

Complaint:

I was fired from my job after I filed Assault charges against my supervisor Mr. Bob Cherry, ANGLO.

I am a female, had been a supervisor with the Time Warner Company in La Feria, Texas.

On or about 10-09-03 Mr. Bob Cherry threw a chair in my direction, because he was angry due to some paperwork that he felt was not getting the attention or he was getting the wrong impression that the paperwork that I was retrieving from the computer was wrong.

He got so angry that he grabbed an office chair and threw it at me. I know he threw it at me because it came into the direction where I was sitting.  I took pictures to show the damage it caused the object it hit, I filed a complaint with the La Feria, Police Department, and I filed a complaint with the Human Resources office in Denver Colorado.

I was fired from the company, and replaced with a Male, Anglo person.  I was told that I was being terminated due to the projected that we were working on was going to be completed.

I feel that I was RETALIATED against for reporting a violation as stated on our work policy. I feel that I was DISCRIMINATED against for being a female, I was replaced by a MALE-ANGLO.

I female ANGLO, by the name of DEANNE GUILLAME WAS TRANSFERRED to the Feira Time Warner are, after having disciplinary problems elsewhere with in the Company's work area, and I was TERMINATED.

I am submitting some of the documents so that you can use after reviewing the points in my complaint.



Olivarez
EXHIBIT NO. 5
8-27-04
Peggy Bryant

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974  See enclosed Privacy Act Statement and other information before completing this form | ☐ FEPA  ☒ EEOC | 360-2003-01291 |

| Texas Commission On Human Rights | | and EEOC |
|---|---|---|
| State or local Agency, if any | | |

| Name (Indicate Mr., Ms., Mrs.) | Home Phone No (Incl Area Code) | Date of Birth |
|---|---|---|
| Ms. Thelma Olivarez | (956) 797-3811 | 07-29-1961 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 300 W. 8th St., Box 9612,  La Feria, TX 78559 | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| TIME WARNER CABLE | 500 or More | (956) 797-9494 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 301 E Exp 83  La Feria, TX 78559 | | |

| Name | No. Employees, Members | Phone No (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN  ☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below) | Earliest: 12-15-2002    Latest: 12-15-2002  ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

On or about December 31, 2002, I was laid off.

Olivarez
EXHIBIT NO. 8
8-27-04
Peggy Bryant

On or about October 9, 2002, my male supervisor threw a chair at me. I filed a complaint with Human Resources at the corporate office and the La Feria Police Department.

On or about December 1, 2002, a Anglo male was brought in to over-see projects. After I was laid off, this Anglo male was hired for my position.

An Anglo female with performance issues was allowed to transfer from Cleveland, OH to La Feria, TX for retraining. Other supervisors have been offered other positions with the company when a project is completed. No effort was made to find other positions for me within the company.

I believe I have been discriminated against because of my sex, female, my national origin, Hispanic, and in retaliation for participating in a protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended.

NARCISO VELA
Notary Public, State of Texas
My Commission Expires
10-25-2008

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Date 5/28/03    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) 5/28/03 |

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| THELMA OLIVAREZ | § | |
| | § | |
| vs. | § | C. A. NO. B04-063 |
| | § | (636(c)) |
| | § | |
| TIME WARNER CABLE, INC. AND BOB CHERRY | | |

## AFFIDAVIT OF DEFENDANT'S ATTORNEY

BEFORE ME, the undersigned authority, on this day personally appeared Defendant's Attorney Michael R. Ezell, known to me to be the person whose name is subscribed below and who, under oath, did depose and state the following:

1. My name is Michael R. Ezell. I am over the age of twenty-one (21) years and am fully competent to make this affidavit. I have personal knowledge of the facts contained in this affidavit, and those facts are true and correct.

2. I am an attorney licensed to practice law by the State of Texas. I am the attorney that represents Defendants in this lawsuit.

3. On August 27, 2004, I took the deposition of Plaintiff in the above-referenced case. Attached hereto as Exhibit "A" to Plaintiff's Motion for Partial Summary Judgment is a true and correct copy of excerpts from the deposition transcript of Plaintiff. Also included in Exhibit "A"to Plaintiff's Motion for Partial Summary Judgment is a true and correct copy of the court reporter's certification of the deposition of Plaintiff and a true and correct copy of certain exhibits to Plaintiff's deposition.

_____
Attorney for Defendant

SWORN TO AND SUBSCRIBED before me the undersigned authority on this 15th day of September, 2004.

Peggy L. Morriss
Notary Public, State of Texas
My Commission Expires
APRIL 23, 2005

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS



EXHIBIT

**B**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **THELMA OLIVAREZ** | § | |
| | § | |
| **VS.** | § | **C. A. NO. B04-063** |
| | | **(636(c))** |
| **TIME WARNER CABLE, INC.** | | |
| **AND BOB CHERRY** | | |

### <u>AFFIDAVIT OF BOB CHERRY</u>

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF CAMERON** | § |

**BEFORE ME,** the undersigned authority, this day appeared BOB CHERRY, who by me being sworn stated as follows:

**1.**

"My name is BOB CHERRY. I am of sound mind, capable of making this affidavit, and fully competent to testify to the matters stated herein, and I have personal knowledge of each of the facts stated herein and each such fact is true and correct.

**2.**

I was the Project Manager for the Construction Division of Time Warner, Inc. ("Time Warner") in the Rio Grande Valley. I was hired in that position in March 17, 2000, and left that position on April 15, 2004. Plaintiff reported to me after she became an "as built" supervisor in 2001, and until she was terminated.

**3.**

Plaintiff, Thelma Olivarez, was hired to work in the Construction Division of Time Warner in the Rio Grande Valley. The Construction Division is separate from the other divisions which

conduct the cable television business of Time Warner.  The Construction Division is now closed and all Time Warner construction is done by independent contractors.  The Plaintiff was hired to work on a particular Construction Division Project in the Rio Grande Valley of Texas.  This construction project involved upgrading of existing cable television systems in that area.  The Plaintiff was told at the time of hire, as were all other employees of the Construction Division in the Rio Grande Valley of Texas and elsewhere, to work on a project which was to come to an end at a point in time.  Initially, Plaintiff and other employees of the Construction Division in the Rio Grande Valley of Texas were told that the project would last two years.  The project, in fact, lasted for almost four years.  Plaintiff was employed for most of that period.

## 4.

Plaintiff was hired as a "as built" clerk.  That is she reviewed drawings of cable television distribution systems being constructed in the field by other Time Warner employees or by outside contractors.  As the volume of work increased, additional "as built" clerks were hired and Plaintiff became the "as built" supervisor supervising these additional clerks.  Plaintiff later in addition to her "as built" supervisor duties, Plaintiff was a supervisor involved in the dispatching of crews to perform construction of cable distribution system work.    Plaintiff, at in all times, continued to be primarily responsible for the "as built" section.  Maps of planned cable system construction were prepared before the work began and were taken to the field.  Often the actual constructions of the system required variations from the plan.  The purpose for the "as built" section was to insure that final maps showed the actual cable system "as built" in the field.  The "as built" personnel did not create specifications or do actual construction.  The work of the "as built" section was the basis for paying outside contractors for the work and for the Construction

Division of receiving compensation from the operating divisions of Time Warner for completed work.

**5.**

At the time Plaintiff was terminated at the end of 2002, the Rio Grande Valley Project upgrade project was substantially complete.

**6.**

Beginning January 1, 2003, the Construction Division in the Rio Grande Valley began to do only new construction instead of replacing and upgrading old cable systems.

**7.**

The Plaintiff worked in the office handling paperwork and never engaged in hands on construction activity or the supervision of personnel involved in actual construction activities other than dispatching personnel to locations for this work to be performed under the supervision of construction supervisors and general foremen.

**8.**

I did not make the decision to terminate the Plaintiff. That decision was made by Jim Davis, the Director who was in charge of multiple Construction Division Projects. Kathy Sapeio, the personnel manager for the Construction Division participated in that decision. The decision as to which employees were to be laid off in the process of reducing the force and winding up the upgrade construction activities in the Rio Grande Valley of Texas was based solely on the needs of the project and types of work to be done on future projects. From 2002 to 2004, as this work force was reduced from a maximum of almost 100 people to zero, I was asked to submit monthly forecasts as to the work to be done the next month. There was simply very little work left for the Plaintiff at the end of the upgrade in December, 2002, which was the time

she was terminated either in dispatching crews or in reviewing "as built" drawings.  All "as built" clerks had been terminated by that time or were terminated shortly after Plaintiff was terminated.  I know for a fact that the decision to terminate the Plaintiff had no relations to and was not in any way related to Plaintiff's sex or national origin.

### 9.

The Plaintiff claims that Don Dover was brought in to do her job.  Don Dover was a hands on construction supervisor with over twenty-five years of experience in building aerial cable television plant.  He was hired and brought in to the Construction Division in the Rio Grande Valley of Texas in November, 2002.  His duties primarily involved the supervision of and assistant to employees building aerial cable television systems in the field.  Mr. Dover's extensive cable construction background and experience was utilized by the Construction Division for the new methods of new cable construction which is very different from upgrading existing cable plant.  Mr. Dover's work was almost most entirely hands on field work while Plaintiff's work involved almost entirely tracking in the office of work done by others in the field.

### 10.

When Plaintiff was discharged, the work "as built"  that she was doing was handled by Manuel Rios, a Hispanic male, who was an existing clerk in the "as built" section for as long as "as built" drawing review was necessary which was less than thirty days. The "as built" section was not in existence after December 31, 2004.  The dispatching of crews was very different as of January 1, 2003, because the type of work was different.  The number of employees and crews was greatly reduced.  The flow of the work was handled in the field by hands on construction supervision without dispatching from the office as the Plaintiff had done.

### 11.

I personally informed the Plaintiff and everyone in the Construction Division in the Rio Grande Valley of Texas and they all understood that their employment was only for a limited period of time and that if they wished to remain involved in cable television construction, they would have to move to another project when the Rio Grande Valley Project was completed. The Plaintiff was terminated as a part of the routine reduction in force and the change of the work of the Construction Division in the Rio Grande Valley of Texas.

**12.**

There was no new construction work done by the Construction Division in the Rio Grande Valley after December 31, 2003. The entire Time Warner Construction Division Projects nationwide shut down by June 2004. Only independent contractors have done Time Warner Construction since that date. I was the last employee to leave and I was terminated on April 15, 2004."

FURTHER AFFIANT SAYETH NOT.



BOB CHERRY

**THE STATE OF TEXAS** §
§
**COUNTY OF CAMERON** §

SWORN TO, SUBSCRIBED, AND ACKNOWLEDGED by BOB CHERRY before me on September __15__, 2004.

SARAH H. SANCHEZ
Notary Public, State of Texas
My Commission Expires
APRIL 14, 2006

Notary Public, State of Texas